## Moore, Appellant, *v.* Moore.

*Divorce—Cruel and barbarous treatment—Evidence—Insufficiency.*

In a libel in divorce on the ground of cruel and barbarous treatment, the libel is properly dismissed, where the allegations are not supported by the evidence.

Argued May 8, 1926. Appeal No. 12, March T., 1926, by libellant, from decree of C. P. Dauphin County, January T., 1924, No. 197, in the case of Jesse J. Moore v. Muzette M. Moore. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Affirmed.

Libel in divorce. Before Fox, J.

The case was referred to John H. Alricks, Esq., as Master who recommended that the libel be dismissed.

On exceptions to the Master's report, the court overruled the exceptions, and refused to grant a divorce. Libellant appealed.

Assignment of Error—Opinion of the Court.   [88 Pa. Superior Ct.

*Error assigned* was the decree of the court.

*Thomas F. Gain,* for appellant.

*Alton W. Lick,* of *Hause, Evans & Baker,* and with him *Howard H. Yocum,* for appellee.

OPINION BY TREXLER, J., July 8, 1926:

The libellant, the husband, brought this suit in divorce, alleging cruel and barbarous treatment, endangering the petitioner's life, and indignities offered, to his person, rendering his condition intolerable and his life burdensome. The Master who heard the case recommended that the divorce be refused. The lower court, after carefully perusing the testimony, took the same view and the members of this court are all of the opinion that the decree of the lower court should be affirmed.

The libellant's story is substantially stated that in June, 1923, the respondent came to his office which was in their residence and stated that she required a maid for a longer time than the one they had who only worked two days a week. When he refused to accede to her wishes, it led to a discussion in which she accused him of immorality which was met by a reply from him accusing her of the same. He testified that then she rushed at him, tore his collar off and ripped his shirt and said she would shoot him and rushed to the first floor of the house where there was a revolver on a nail back of the door. The libellant then went to the third floor and remained in the bed room until the children came from school. When he heard her and the children in the kitchen, he took his luggage and left on a trip.

A few days after that, he had occasion to punish Esther, their little girl. He took her in the library and spanked her. Her mother was in the house, in bed, and when she heard the little girl crying, she picked up

a sharp steel letter opener, eight or ten inches long, and tried to stab the libellant, in fact, succeeded in running it through his sleeve, and then Phil, a son, interfered and she told him to get a sword and kill him. He did come down with a French bayonet and would have stabbed him had not the housekeeper caused him to desist.

Three weeks later, the meal was on the table and then the wife brought in some coffee of which he took a swallow and immediately realized it was bi-chloride. He immediately took a remedy. After that he did not eat anything except that which was served to the other members of the family. One time she put poison on his tooth brush. Then later, he had an affair with his oldest son and he remonstrated with the son and the son told his father that he lied and knew that he did, the father slapped him with the open hand and the mother then interfered and struck the libellant on the jaw, knocked a tooth out and wounded him in the temple, and they had a general scuffle. The above is in short the accusation which the libellant brings against the respondent on the score of personal violence. As to the indignities to the person, he alleges that she told the children that he spent his money and time on immoral women and that she alienated the children from him so that they were beyond his control. These occurrences would indeed furnish reasonable ground for divorce if we were convinced of their truth, but an examination of the remainder of the record throws serious doubt upon the libellant's story and leads to the conclusion that he has failed to prove his case.

Beginning with the trouble with his son, the interference of Mrs. Moore seems to have been such as any mother would have taken. The father had grabbed the son by the throat and he was beginning to strangle, his face was getting dark, and of course, under the circumstances she was not bound to use the utmost care

in the method she employed in trying to get her husband to desist. Her account of the affair is corroborated by the other participants. She denies entirely that she went to his office asking him to employ a maid for a longer time. She says that she never took a paper knife or gun or anything of the kind to do any harm to him. She absolutely contradicts his statement in regard to the whole affair. As to the time when he corrected the daughter, Esther, she never picked up a paper knife nor tried to do bodily harm to him. With her previous experience of his violently correcting her children, she thought it her duty to interfere and she admits that she scratched him. She never told her son to get a sword and kill him. The son did get one and said, "if you don't let go of mother I will kill you." Thereupon the husband took the wife and kicked her down two steps of the stairs. It was at her request that the son put away the sword.

The testimony as to the bi-chloride being put into the coffee hardly requires any refutation on the part of the respondent although she testified that she never did anything of the kind. If the libellant suspected such action, the means were present to verify his suspicions.

During the occurrence with the daughter, Mrs. Moore admits that she did scratch her husband in order to get him to desist. She did tell the children that when they were short of funds that "we would have plenty if Mr. Moore was not spending it on an immoral woman and her two illegitimate children." She insists that what she said was true, but she never told this outside of the family circle. The children testified that their father called their mother a prostitute in their presence and it would seem in this respect that neither party was slow of speech.

As was said before, his narrative is not substantiated. The preponderance of proof is against him.

The respondent may have gone too far in interfering when he was punishing the daughter, but the fact seems to be entirely clear that his temper got the better of him when he tried to correct his children and would afford some justification for her act, and in any event would not in itself furnish the grounds for a divorce.

The assignments of error are overruled and the decree of the lower court refusing the divorce is affirmed, the appellant to pay the costs.